Hear ye, hear ye. This Honorable Appellate Court of the Second District is now open for suit to adjourn. The Honorable Donald C. Hudson presiding. Good morning. Please be seated. New York is the first case of the morning call. 2-13-0-1-2-1. Jane Doe is voted next friend of John Doe v. Boy Scouts of America and the Black Hawk Warrior Council of Boy Scouts of America. On behalf of the Avalanche, Mr. Evan Smola. On behalf of the Boy Scouts of America, Scott Howie. And on behalf of the Black Hawk Council, excuse me, Mr. Dana C. Crowley. Thank you. Counsel, I do have an announcement to make. Justice Robert Spence, who is also assigned to this panel, could not be here this morning. He will, however, be able to listen to the recorded oral arguments. Obviously, he has the brief access to the record. And he will be a fully participating member of the panel in arriving at a decision in this case. It's also my understanding that counsel for the appellee will be splitting the time. Is that correct? You've already agreed on that then? All right. With those thoughts in mind, then Mr. Smola, you may proceed. Thank you, Your Honor. Justice, if you may please the court, Evan Smola on behalf of the plaintiff at the lawn. I'd like to address essentially three arguments today that somewhat overlap due to the nature of the case. First, the question of fact that was determined by the trial court that should have been left to the jury. Second, the issue of duty. And what is that issue? The question of fact in this particular case is whether or not the information provided to a Black Hawk Area Council employee, Ranger John Garrity, was sufficient notice for the Black Hawk Area Council to take steps to either terminate or reassign Mr. Bickerstadt. Let me ask you this. What are the other two points that you want to make? Duty and proximate cause with respect to foreseeability. Let's go back. What relationship or what was the relationship between Black Hawk Area Council or Boy Scouts of America and Bickerstadt or John Doe at the time the sexual assault occurred in July of 2006? What was the relationship? The relationship, John Doe remained a Boy Scout active in scouting at that time. Bickerstadt had retired three months before the incident occurred. He retired effective April 1st, 2006. The incident occurred in July of 2006. John Doe had no knowledge that he had retired. He testified to that in his deposition. So it's undisputed that the sexual assaults occurred after he was no longer employed in any capacity by the Boy Scouts? That's undisputed. Let me ask you another threshold question. Do you have any cases that hold that under negligence theory, the organization would be liable for conduct that occurs after the employee has left the organization? Any online cases that say that? I believe the trial court looked for cases on point. I've looked for cases on point. I don't believe that there's a case one way or the other that says once a person is retired that automatically ends any duty to minors that interacted with this person during their employment. And I think that that goes to sort of my second point with respect to duty. The question. Assuming that there was, assuming that the tort should be extended to post-employment actions. What was it that Black Hawk Area Council of Boy Scouts should have done when this Mr. Clark made this disclosure? Well, I think Mr. Gary, as an initial point, I think it's important to to understand the two different torts in this case with respect to what Mr. Bickerstaff did, which is essentially a tort of assault and what our allegations against Black Hawk Area Council were. Our allegations against Black Hawk Area Council are not some sort of apparent or actual agency allegations. Certainly, Mr. Bickerstaff's conduct is outside the scope of. You still have to show proximate cause, though. What what is it that they should have? Well, first of all, the information was basically the YMCA. Correct. That's all that was ever disclosed, is that he was either looking at boys or saw boys while they were either showering or in it. Is that correct? Well, I think it's more than it's slightly more than that. I mean, it does deal with the YMCA. But what happened here was two minor boys, the sons of Mr. Clark, realized that Mr. Bickerstaff was doing something so obvious that it brought that to the boys attention. And what was that something? Looking at them in the mirror, scheduling his time at the YMCA so that he was there during swim meets in the middle of their swim practice. That was the speculation that that's what he was doing. That was the speculation. And I but I don't know what is it again. I mean, what was Black Hawk or the Boy Scouts of America supposed to do if that information, assuming it was disclosed to somebody who was responsible to report it? What what actions were they required to take? Terminate him or reassign him to a position in which he did not interact with children on a day to day basis. And isn't that a major leap? What's what are the steps required in order to achieve that? And the steps required to achieve the end? I don't think this is a major leap. This organization. Are you familiar with the Abuse and Neglect of Child Reporting Act in Illinois? I am. And they're this. You didn't cite the. Did you cite the act in your. Right. I believe that has to do with men. I did not say that has to do with mandatory reporting. I don't think that it would necessarily apply in this particular. So it wasn't required to be reported under the Abuse and Neglect of Child Reporting Act. I'm not alleging an affirmative duty to report this to the to the state of Illinois or to authorities. But what the Boy Scouts of America and what Black Hawk Area Council in particular knows is that there is an issue within the organization of abuse occurring by individuals that are involved as either employees or volunteers. As I cited in the reply brief, there's an extensive education about how to prevent this. I think you're right. There's a heightened sense of concern, as there should be. But you're suggesting termination. So if he gets terminated for looking in the mirror and that's all, if you're legal counsel to the Boy Scouts, are you going to advise terminating somebody because somebody thinks they're looking at them in a mirror? If I. You can talk about a lawsuit coming down. If I employed an individual who deals with minors on a day-to-day basis and a minor, through his father, reported to me that he was uncomfortable around that individual because of actions that were taking place while the children were in a locker room at a YMCA, I absolutely think. You'd terminate him automatically because somebody thinks that he's being looked at in a mirror. A child. This isn't a single. The court concluded that the actions of Mr. Bickerstaff were, and the exact phrase from the case shows that Blackrock could have learned that Bickerstaff had homosexual tendencies. I take great issue with that conclusion because what occurred here, and there certainly is some talk in Clark's deposition about Clark feeling uncomfortable around him, too. But the key is that his children felt uncomfortable around him. If it is the policy of this state that in order for us to take any steps against an individual, we have to actually see something happening or we actually have to catch somebody red-handed, then we've acted too late in that scenario. You just said a little while ago that you didn't believe that this was required to be reported under the Abuse and Collective Child Reporting Act, but now you're saying that they're required to take some action based upon this type of disclosure. If there is a duty, if you have reasonable suspicion that abuse is going on, you're acknowledging that it didn't rise to that level. So what level does it rise to if it's not a reasonable suspicion of abuse? This is the distinction that the court in the Jane Doe three cases made, the Supreme Court made in comparison to the appellate court. The Supreme Court focused strictly on foreseeability, not these affirmative duties to report, the affirmative duties to warn, the affirmative duties to do this and that. It was strictly on the foreseeability of what occurred. And that's the sole focus of the Supreme Court in that case. In this case, we have children who feel uncomfortable, feel violated around an individual who is involved. Did the kids say that they felt violated? They didn't say that, but it was enough to report it to their father. I think that that's a substantial step for a child. Let me ask you, I wrote this question down last night. It appears to me that you're operating from the premise that the Boy Scouts knew they had pedophiles in their ranks and they should have done more to root them out. Is that basically what you're saying? I think that they have knowledge, and in light of that knowledge, when something like this is reported, they need to take more steps than, you know, a fire chief dealing with firefighters. They have a specific relationship with minors throughout the country. If they had gone to – if somebody had sat down with Mr. Bickerstaff and said, Mr. Bickerstaff, two children have reported that you were looking in the mirror, they think you were looking at them while they were showering, and he said, I don't know what you're talking about, what more could they have done? I don't know why we require, as the trial court said, some sort of Perry Mason moment or some sort of prompt confession by Mr. Bickerstaff in this case. We're dealing with minors who this state holds in the highest regard and must protect as best they can. We're dealing with minors who report a problem through their father to an organization that then does nothing with that information. They could have reassigned Mr. Bickerstaff. They don't have to fire him outright. But the reason that this occurred is because between – as defense counsel pointed out, Garrity left in 2000. So we know that this conversation occurred before 2000. My client had never met Mr. Bickerstaff before 2000, and over the course of six or seven years, grew to know him through his relationship in scouting. And that goes – They only saw each other sporadically at scouting activities, and Bickerstaff was not – he was not a scout master. His employment was organizing activities, correct? Well, his employment – he mentions going into schools on a – 15 to 20 schools during the fall. He goes to all the annual events. There is some discrepancies in – and it may just be the result of them having interacted at different times. But there's some differences between Jane Doe and John Doe's testimony regarding their interactions with Bickerstaff. But certainly, he's not someone they knew outside of scouting, and he's someone that both of them testified they trusted because of his association with scouting. And though the incident didn't occur on an official scouting or an official Blackhawk trip, it was a scouting-associated event. Scouting-related but not scouting-sanctioned. Scouting-related but not scouting-sanctioned. That's a fair point. Let me ask you this about the authentication issue. Assuming the trial court was in error in not allowing or considering the diaries or the journals, is there anything in the journals – what is there in the journals that helps your cause to show that the Boy Scouts or Blackhawk Area Council should have done more? Frankly, I don't think that the journals are really the crux of this case. And I don't think that they're required – certainly, they wouldn't have had access to the journals during his employment. But what I think it does show is that this person was, in fact, a pedophile and a child molester for years. That's uncontested. I agree. And that's why I don't think it necessarily matters as much as the report to Blackhawk Area Council by Stephen Clark regarding the incident with his children. You say in your briefs that Bickerstaff, through his position in scouting, groomed this particular child and other children. What do you mean by that? Well, I think – Do you know what grooming is?  What is grooming? Depending on who you ask, sometimes people are plotting with gifts or, you know, it's a – different people have different opinions as to what that means. Well, there's a criminal offense called grooming. Okay. I'm not aware of the specifics of the criminal grooming offense. That's an online activity primarily, but it's soliciting and preparing a child for sexual activities with an adult. Is there anything that he did in his relationship in scouting to prepare this child for sexual activities with himself? I think he showed him – So the child would not disclose? I'm not sure with respect to the disclosure, but I do think over the course of these years he grew to know him. He was not a stranger in any way whatsoever. He – and I don't recall the precise timing of it, but there was some indication that he gave him gifts or money of some kind shortly beforehand. And so I do think there's evidence of that. And I do think that that – the only reason that opportunity existed was because Blackhawk failed to either end the relationship with Bickerstaff in 2000 when they learned of this, or they failed to reassign him. I'm sure there's administrative positions that wouldn't have him interacting, going to annual events and things like that. But the magnitude of the burden here for the Boy Scouts of America in simply reassigning somebody is – You know, that reassigning somebody, if they know that somebody's a risk to children, reassigning doesn't relieve them of their responsibility, does it? I wholeheartedly believe he should have been terminated. On what basis? On the basis that two minor children reported a problem with this person to their father in 1999 and 2000. They reported being uncomfortable, but again, as we've been talking about this morning, there was nothing specific in a reaction with them that was reported, correct? Correct. Wasn't it a feeling of being uncomfortable? What is it that needs to be done? Does the child have to be touched in order for that to be sufficient to terminate someone? I believe that this is a question for a jury. Is this sufficient? It may not be sufficient. A jury may say, you know what, we think of this as a rumor. We think of this as a kid that doesn't like the guy and said something to his father. If that's the case, fine. But if we decide as a matter of law that this is not enough, then what is? Before your time ends here, what is the, obviously you've joined the council and the Boy Scouts of America, what was the employment relationship that you're hanging your head on that existed between BSA and Vickerson? I think as the briefs lay out somewhat, the main allegations I think against the Boy Scouts of America come down to a voluntary undertaking. I don't believe I can claim that he was actually employed by them. I think that's fully fleshed out. That's just a background check. Background checks. They do do some things with some human resources things for people, but he was an employee of BlackRock. This one, finally, before you wrap up, regarding the claim of negligent hiring, can you tell us how Vickerson's discharge from the Navy for alleged homosexual tendencies or drug use or his DUI in Germany made it reasonably foreseeable that he would sexually assault scouts? This court recently in a Rule 23 opinion mentioned there was a case of sexual assault in a case called Navarrete v. Naperville Psychiatric Ventures in which a person had a prior conviction for cocaine use. The defense arguments was that there's no negligent hiring here because there's no real causal relationship between cocaine use and sexual assault. What the court says is that that's a crime of moral turpitude, and it should have put them on notice of a problem with this person. I think that those two things are evidence of that, and I think that that combined with this report should have warranted termination or non-hiring of the individual. Being homosexual is a crime of moral turpitude? No, I don't believe it. Or having a DUI is a crime of moral turpitude? I don't believe being homosexual is a crime of moral turpitude. I see there's a DUI, is it? A DUI with an 18-year-old in the car? Is that a crime of moral turpitude? I haven't thought about that, Judge. Okay. Thank you, counsel. Your time has expired. You'll have an opportunity to address the court again in rebuttal. Thank you very much. Thank you, Justice. With regard to the appellee, either Mr. Hawley or Mr. Crowley may proceed depending on how you've done with your time. Good morning, Your Honor. Dan Crowley on behalf of the Black Hawk Area Council. Judge, Plaintiff in his argument in the briefs in this morning is essentially asking this court to announce a new rule, a rule that holds employers liable for actions of their employees after they've been terminated. In essence, Plaintiff is asking this court to create a duty on behalf of the Black Hawk Area Council without end. We maintain, as the trial court stated, that Plaintiff has failed to produce any covenant evidence that the bricker staff was a danger to children. Let me just stop you right there because I want to understand the extent or the bounds of your argument. I think Illinois law, I think we can say, probably affords little scope for liability for post-termination actions. But what about in a case the court would find that grooming or something was going on before, but the actual assaults technically took place after employment had been terminated? Are you saying that the law would afford no relief in those circumstances? I think, again, if we look at this particular case, we have an end of a relationship on April 1st. We have the sexual contact in June. There is absolutely, even if that had occurred, and it occurred consistently throughout the six years that Bricker Staff was with the council, there is no tether back from the date when this occurred to when he was terminated. There is no connection. And further, there's no connection whatsoever, not only between the Black Hawk Area Council and Bricker Staff, there's no connection between any of the activities they engaged in. The activity itself, I would point out, was not a Boy Scout activity. It was completely unrelated as well as unsanctioned. It was a tray-o-ree with a tray of patches. Some Boy Scouts, some military, other things. So you're saying this case goes out simply on the fact that it occurred post-termination of employment? I do, Your Honor, yes. And whatever occurred before that would be irrelevant? I don't know necessarily that it would be irrelevant. I think there are, I mean, I could, I suppose, imagine a possibility, again, where there would be some connection from his employment, what he was particularly doing in his employment, and what eventually happened, again, some tether from the time he was employed to what happened. You're saying the tether isn't here? There's nothing here, absolutely nothing here between the time he was terminated and the time this occurred. Let's talk about that tether that you just mentioned. You argued in the trial court that the journals and diaries were not admissible because they were not properly authenticated, correct? The trial court agreed with you? It was an argument made by Boy Scouts of America, but I think of all your arguments. You're familiar with the new rules of evidence and case law regarding authentication, correct? Correct. And you acknowledge that a document can be authenticated based upon its contents, the writing, the matters discussed, and other circumstances under the new rule of evidence 901b-4? Yes. If you open any page of these diaries or journals, in particular the ones related to the victim in this case, the plaintiff in this case, isn't it clear that these documents are self-authenticating, that they discuss the very activity that's alleged in the complaint? When you say the activity, are you referring to sexual activity? Not just the sexual activity, but the meetings, the association, the relationship between the victim and Bickerstaff. Let me ask you, this is just one page of the journal that's dated from July where Bickerstaff writes, and these were collected from his home where he lived alone, correct? Correct. It's not unlike taking a letter from a jail cell where a defendant who's a suspect in a murder or a rape case documents what he's done to the victim. When I was in Germany, I pretty much left my condoms and lube at home. For some reason, I decided to pack a few, and I'm glad I did. I picked Quentin up from his house last Tuesday at 9 a.m., and it goes on. And then he talks about a prior activity at a traderie. Last fall, I had asked him if he would ever be interested in attending a scout traderie. He had given me a harmless hug and a disheartened smile and said yes. Well, nine months later, we're in the car heading down I-39 and I-80, and then, of course, they go to Michigan. These acts take place. So there is the tether. Between the time he was terminated. This was before he was terminated. Activities that occurred during the time he was employed. Well, you said there was no tether between what happened post-employment and what happened when he was still with the Boy Scouts, and I said, there's the tether, isn't it? That's not what I was stating, Your Honor. Okay, I must have misunderstood what you were saying because this is his journal. Assuming that this is admissible, does that change your case at all? I don't think it does, Judge. First, we had, the Boy Scouts, or the Black Ontario Council, had no knowledge that this had occurred whatsoever. And that's, I think, the point that counsel is trying to make is that they should have known, and if they had known, this type of activity wouldn't have happened. Your Honor, rhetorically, how would they have known anything in the journals? The journals weren't discovered. I'm not talking about the journals. That if they had taken action after the report to Garrity by Clark, which they should have, that's plain as argument, they should have done something. They did nothing. And my response to that, Your Honor, would be that whatever they would have or could have done back when these comments were reported to Ranger John, I mean, again, what would they or what could they have done? They could only have perhaps spoken to him, investigated. What about making sure he was not in contact with children alone? Would that have been too much to ask? The organization is the Black Ontario Council, Boy Scouts of America. That is the organization. They have a too-deep policy anyway, don't they? Correct. They're not allowed to be alone with children. Never. And certainly the victim's mother knew that, correct? Correct. Again, the tether I referred to was the tether from the point where he's terminated. If there had been some continued relationship between Vickerstadt and the council and somehow under the auspices of the council, I think by way of example, a teacher who retires who then volunteers to coach a sporting team. Like Sandusky being brought back to the campus at Penn State. He's not an employee. But they let him have access. Let's assume that's not the scenario. Are there some public policy considerations the council alluded to that liability should be extended beyond the technical bounds or the termination of the employment? You seem to be saying that if these acts take place two days after or the next day after he leaves the employee of the organization, it doesn't matter what happened before. Is that your position? You're saying it's a matter of law, basically. Yes, Your Honor. I think there's public policy. Certainly there's public policy to protect minors. But I don't think that in this case there's also public policy to give employers a chance to have liability extinguished at some point. To pronounce the rule that this liability should be extended is essentially to say that this duty extends into the future. And, Your Honor, perhaps it's one day, perhaps it's one year, perhaps it's forever. Let me just pass it to Scenario 2 because I know you're time is up. All of this grooming, let's assume in the case everyone agrees this grooming is going on for months. The employee then is terminated or fired and the next day something happens. So you're saying that it doesn't matter. The grooming was the day before he left. It's all irrelevant. It's a matter of law. Isn't that striking as being a little bit harsh? Perhaps harsh, Judge, but I also think that with the tort of negligent retention, I think it's clear and unequivocal that there has to be at the time a retained employee. Otherwise, it's my argument that we open up, although it's harsh, we open up Pandora's box too to somehow now try to close off liability at some further point. Again, and that's the tether, when there's no connection that continues on after the termination. All right. Thank you. Your time is up. Thank you very much, Judge. Mr. Howie, you may proceed. May it please the Court. I'm Scott Howie. I represent the defendant at the Lee Boy Scouts of America. As I understand the plaintiff's argument this morning, he seems to concede that Mr. Bickerstaff was not an employee of Boy Scouts of America, the national organization, which is the client that I represent, and therefore the allegations as to the theories of negligent hiring and negligent retention do not apply to Boy Scouts. So unless the Court has any questions about that aspect of the case, I would prefer to focus briefly on the issue of voluntary undertaking, which the plaintiff has raised briefly in the argument this morning. The voluntary undertaking that the plaintiff contends applies to Boy Scouts is, as Justice Burkett observed, the issue of performing background checks. And the question, the allegation, or the argument by the plaintiff that the Boy Scouts undertook voluntarily to conduct such checks. It's important to recognize that in Illinois the extent of a voluntary undertaking is defined and delineated by the extent of the undertaking itself. The extent of the duty that one undertakes is defined by the scope of the undertaking itself. And the evidence in this case does not show any voluntary undertaking of a duty to perform any sort of background check on behalf of the Boy Scouts. You essentially share the file that you have on the particular individual with the new counsel, correct? That's correct, Your Honor. The evidence shows... And that's what you did. And we did that. The testimony, the evidence is that if there is a voluntary undertaking by the Boy Scouts, it is to inform the local councils of critical information they knew. And that's a quote from the scout executive who actually hired Mr. Bickerstaff. The obligation that the national organization undertook was to supply information in its possession. It had veto power over potential hires by local councils if those potential hires were named in the ineligible volunteer files. It is true, is it not, that Boy Scouts of America was well aware of the fact that there were potential predators who were trying to enter and had entered their ranks over the years? Yes, it was aware that those individuals... They were well aware of it. They were painfully aware of it. The premise that the plaintiff is operating from is that with that knowledge, the Boy Scouts of America had a duty to do more than what they did. And representing that you would share your files, that's interpreted to mean they should have done more than just share their files. They should have actually done some form of investigation or background checks. Well, and more specifically, Your Honor, that's correct, but specifically the plaintiff contends that that duty was rooted in a voluntary undertaking and contends that the role that Boy Scouts played in the hiring of local... well, the retention of local volunteers and the hiring of local employees was subject to a duty to conduct background checks. But the evidence is clear that Boy Scouts had a very limited role in that hiring procedure. It acted as one council employee, I believe the same scout executive testified, acted as a clearinghouse for information. Counsel, let me ask you this. Did the Boy Scouts have in their possession information relative to his discharge from the military? The evidence is that they did not, and that that was not something that would have been provided. The evidence also, I mean, to look also not just at what the voluntary undertaking was, but even assuming that there had been a voluntarily undertaken duty to conduct some kind of background check into potential local employees, it's important to look at what that duty might have yielded, what might have resulted if, assuming that Boy Scouts had undertaken such a duty, what would they have discovered had they fulfilled that duty? And the evidence is quite clear, it's undisputed, that the only information out there to be found was the fact that Mr. Bickerstaff had been honorably discharged from the Navy in 1978. There's certainly nothing about the discharge from the Navy that by itself is not a red flag, as the plaintiff characterizes it. There are suggestions in the briefs that it was a suspiciously brief stint in the Navy, but there's no evidence to support that, not even any suggestion that judicial notice might be taken. All there is is two years in the Navy capped by an honorable discharge. The only other issue that the plaintiff raises as a potential red flag, in their words, that might have put Boy Scouts on notice is the DUI incident in Germany in 1989. That, again, was not a crime of moral turpitude, as Justice Burkett discussed with the plaintiff's counsel here. It did not involve a minor. It certainly didn't reflect well on Mr. Bickerstaff, but at the same time it's not the sort of incident that would be predictive of any sort of violent or predatory tendencies. And it's that predictive nature that's essential to the question of whether something is something that ought to be raised, that ought to stand in the way of a person's hiring. With respect to the ñ we're not talking about negligent hiring allegations here, but it's important to look at what the elements for that tort might be that might put an organization on notice of a potential hire being a threat. The requirements set forth in cases like the Strickland case and the Giraldi case, which we've cited both from the First District, those speak of a legal or logical relationship between the offense that is out there, that is known, and in this case it wasn't known, but assumed for the sake of argument that it was or that it was discoverable. Neither of the incidents in this case are legally or logically related to the harm that eventually occurred. We're talking about an honorable discharge from the Navy, predicated apparently on suspicions of homosexual tendencies. And as Your Honor observed, homosexual tendencies are far from a crime of moral turpitude, not a crime at all. Indeed, in this day and age, not even grounds for discharge any longer. And as to the drunken driving incident in Germany, the only way that the plaintiff can characterize that as at all suspicious is by observing that there was an 18-year-old man in the car with Mr. Bickerstaff. And while he characterizes him at some point as being a teenager, it's undisputed that that man was an adult. He was a fellow employee of Mr. Bickerstaff at the Department of Defense. There is nothing about either of those incidents, either the honorable discharge or the DUI citation, that is legally or logically related to the offenses that Mr. Bickerstaff later undisputedly perpetrated against the minor plaintiff. No way for, even had they been known, no way for them to have applied in a manner that might have led Boy Scouts or even Black Hawk Council to be concerned about Mr. Bickerstaff's relationship with minor children. And so for that reason, there simply is not the connection that's necessary to establish either a voluntary undertaking or, even had there been a voluntary undertaking, not enough evidence to support a claim against the Boy Scouts of America. It's sort of like, you know, the trial court made a comment, made some comments about had Black Hawk or had the Boy Scouts done something when Mr. Clark made the report to Mr. Garrity, to Trader John, that Bickerstaff might have responded with a lawsuit. Do you recall those comments by the trial court? I do. Is that, did that have any relevance at all to whether or not Black Hawk or Boy Scouts should have done something? If a person makes a report as a mandatory reporter, as long as their report is made in good faith, they're immune from civil liability. So why does, why would that have anything to do with the court's consideration of the issues in this case? Well, without trying to read Judge Doherty's mind, I think it is relevant not for the idea that the council or the national organization couldn't have done anything because they had been sued. I think what the judge was getting at, if I might take the liberty, is that the actions that the plaintiff contends should have been taken were not only not required, but they were the sorts of things that, in part because they were not required, but also because they would have been a fairly drastic overreaction, that they could have been so drastic an overreaction as to have prompted a lawsuit. I don't think it's the concern for the lawsuit specifically that absolved either defendant of liability or of the duty to do something. It's the fact that the things that are alleged, that allegedly should have been done, were quite a bit beyond the pale, so much so that they might even have prompted liability. I believe that that is what the judge was getting at. And whether that's what he was thinking or not, I think that's a reasonable way to look at these facts. Especially in conjunction with Your Honor's observation about the statute that requires mandatory reporting. These are not actions, certainly not the ones that are raised against Blackhawk, which are not particularly relevant to my client, but also even the other things that the plaintiff contends the Boy Scouts should have known about the discharge and about the DUI incident. Those are things that also do not call for reporting. Certainly if they don't call for reporting under the statute, they also wouldn't justify a duty to terminate Mr. Bickerstaff under the common law. Well, if Bickerstaff had made some comments to the boys or said something, that may have been required to be reported, correct? You're referring to the boys? Whether undressing or taking their showers, the YMCA. There certainly could have been actions. That's a crime under Illinois law. Certainly. The reporting statute would require reporting of some things, certainly something more, I think, than what occurred here. It had something that was subject to the required reporting act occurred in that locker room. Then it's very conceivable that that sort of thing might have justified Mr. Bickerstaff's termination, might also have required it for the purposes that we're here today. But when we're talking about a suspicion of strange behavior in a locker room, I think Your Honor's suggestion, if I may, is correct that that's not enough to require reporting. And certainly it's not. If it's not enough to require the fairly minimal initial act of reporting, it can't reasonably be considered sufficient to justify the termination of the person accused of it. Thank you, Mr. Howell. Thank you, Your Honor. All right. Mr. Smully, may I address the Court in responding to Butler? Thank you, Your Honor. I think, as you pointed out, don't believe that it's appropriate to, as a matter of law, decide that because an employment ends, there can be no liability whatsoever for what occurred during the employment. I think that that focus is really a proximate cause question. And the question is whether or not the duration of the employment and what occurred during that employment was a proximate cause of what happened after the employment. And certainly there's going to be scenarios where an employment ends and a year, two years, three years later, something happens and that there's no causal connection there. And talking about, again, the point counsel made in our questions earlier, what was it that Blackhawk was supposed to do? Blackhawk should have terminated Mr. Bickerstaff. On what basis? On the basis that they're an organization that deals strictly with minors and that two minors had reported to their father that Bickerstaff was looking at them in the shower and was coming to the YMCA during times that they were at swim practice. And this is a person who had a 20-year history with Boy Scouts at various organizations over the years, finally at Blackhawk, but essentially an unblemished record. And did no prior reported abuse. But the children were right. I mean, whether the children were right or not, you know, I asked you the question about the journals. The journals are double-edged sword for the plaintiff because in the journals he documents how careful he was not to reveal his tendencies while participating in scouting activities. He concealed this, intentionally concealed his predatory tendencies from the Boy Scouts and from Blackhawk, which he documents in his diaries. He intentionally avoided any conduct that would have alarmed or aroused suspicion. So how can it be that we can charge Blackhawk or Boy Scouts of America with the responsibility to know something that the defendant in a criminal case is intentionally concealing from them? He made a mistake, though. He acted around children in a manner that wasn't appropriate. And those children reported that to their father. And their father brought it to Blackhawk. And if it's a matter of law that that's not enough, then the judiciary is going to be determining what exactly needs to happen before somebody is charged. This is a policy question, perhaps, for the General Assembly. But you acknowledged earlier that the activity that was observed by the boys and reported to Blackhawk was not sufficient to require mandatory reporting under the Abuse and Neglect of Child Reporting Act, yet you want to attach civil liability to an organization that has been duped by a predator. I don't believe it's a policy question. I believe it's a jury question. Whether or not this is enough should go to a jury. The trial court said there's no confident evidence before the court that Bickerstaff was an abuser prior to the conduct at issue here. The journals, I think, document that he is an abuser. The court said there's no confident evidence that Blackhawk or Boy Scouts knew that. When I read the trial court's opinion, what I get from it is that there has to be a conviction. The abuse has to have occurred. The touching has to have occurred before any actions are taken by Blackhawk. And I don't think that that should be decided as a matter of law. Even if that's wrong, as you know, it's a well-settled document. We can affirm judgment if that's our decision on any basis in the record, even if the analysis is wrong. But let me just ask you one other question. There's two defendants here. Mr. Howey alluded to the Boy Scouts of America provided all the information they had turned over to the counsel. Are you disputing that? I'm disputing that that's all they should have done. I don't disagree that they turned over their file. But what's your response to his argument? Even if they should have done some affirmative uncovering of these incidents that you referred to, what is the legal and logical nexus between those things and what ultimately happened? How would that have played in? Well, we can't view the reporting to Blackhawk of what happened at the YMCA in a vacuum. If they have a complete file of what's occurred with this person, and we don't even necessarily know that he was discharged for homosexuality. There's also mention of drug use in that particular discharge file. But, you know, this court in Navarrete indicated that a past conviction of cocaine use could be. . . Rule 23 is not authoritative. I understand. You know that. I know that. Nevertheless, I think if all of this information is in the possession of Blackhawk when this occurs, they make a more informed decision as to whether or not to terminate. Essentially, that's what I believe they should have had. I believe Boy Scouts had the ability to get that information from its local counsels and convey it down the road. With that, I thank you for your time, and I would request that the Court reverse the trial court and remand for further proceedings. Thank you very much. Thank you. At this time, I'd like to thank all counsel for the quality of your arguments. The matter will, of course, be taken under advisement, and a written disposition will issue a due course. We'll be adjourned for a while until the next case. Thank you.